UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

FILED

2005 JUN 27 P 12: 22

U.S. DISTRICT COURT
BRIDGEPORT, CONN

| | | |
|---|---|---|
| CAROL A. FOX | : | |
| VS. | : | NO. 3:02CV1540 (WWE) |
| | : | |
| TOWN OF EAST HAVEN, | : | |
| JOSEPH MATURO, JR., | : | |
| LOUIS PANE, | : | |
| FRANK GENTILESCO and | : | |
| LOUIS CRISCUOLO | : | JUNE 23, 2005 |

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The Plaintiff in this action, Carol Fox, herein submits her Memorandum of Law in Opposition to the Defendants' Motion for Summary Judgment.

### I. FACTS

The Plaintiff brought this action against the Town of East Haven, its Mayor at the time, Joseph Maturo, Jr., and several employees of the Defendant Town who were either supervisors of the Plaintiff, an employee of the Defendant Town, or who, in various ways, conspired to deprive the Plaintiff of rights guaranteed her under the Federal Constitution.

In essence, the Plaintiff contends that the Defendants violated her First Amendment right to free speech by retaliating against her for the exercise of such speech and subjected her to disparate treatment in the workplace in violation of the Equal Protection Clause of the Fourteenth Amendment.

### II. LEGAL STANDARD FOR SUMMARY JUDGMENT

When passing upon a motion for summary judgment, the district court may not

resolve factual disputes or make credibility determinations, even if the case is one which eventually will be tried without a jury. In re Unisys Savings Plan Litigation, 74 F.3d 420 (3d Cir. 1996). Rather, the court must resolve any ambiguities and draw all inferences against the moving party. Tenenbum v. Williams, 193 F. 3d 581, 593 (2d Cir. 1999), cert. denied, 529 U. S. 1098 (2000). The evidence of the party against whom summary judgment is sought must be accepted as true.   Revak v. SEC Realty Corp., 18 F.3d 81 (2d Cir. 1994).   "If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996).

To raise a genuine issue of material fact sufficient to defeat a summary judgment motion, the opponent need not match, item for item, each piece of evidence proffered by the moving party. So long as the opponent has offered enough evidence to exceed the "mere scintilla" threshold, summary judgment is to be denied. In re Unisys Savings Plan Litigation, supra, 74 F.3d 420, 433.

"A party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law....The moving party is said to bear both the initial burden of production and the ultimate burden of persuasion on the motion....A nonmoving party, even though having the ultimate burden at trial, may indeed have no obligation to offer evidence supporting its own case unless the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact." Carmona v. Toledo, 215 F.3d 124, 132-33 (1st Cir. 2000).

"A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the non moving party.' Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, '[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper.'" Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir. 1997). Citing Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996).

### III. ARGUMENT

The Plaintiff was terminated from her employment with the Defendant Town on August 15, 1997. She thereafter employed the services of her union to obtain reinstatement to her position and to obtain unemployment compensation for the approximately one year that she was separated from her employment and which the Defendant Town had opposed. The Plaintiff was successful in both endeavors winning her job back and receiving unemployment compensation.

It is the events which took place *after* her return to work which inform the Defendants' actions and motives toward the Plaintiff and which give rise to the Plaintiff's claims.

"In order to defeat a motion for summary judgment addressed to a claim of retaliation..., the plaintiff must first present sufficient evidence to make out a prima facie case, that is, evidence sufficient to permit a rational trier of fact to find (1) that she engaged in protected participation or opposition..., (2) that the employer was aware of \ this activity, (3) that the employer took adverse action against the plaintiff, and (4) that a causal connection exists between the protected activity and the adverse action, i.e., that

a retaliatory motive played a part in the adverse employment action....The causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action." Cifra v. General Electric Co., 252 F.3d 205, 216 (2d Cir. 2001).[1] See Quinn v. Green Tree Credit Corp., 159 F.3d 759, 769 (2d Cir. 1998) (discharge less than two months after plaintiff complained to management and ten days after she filed complaint with state human rights office established *prima facie* case of causal relationship); Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 224 (2d Cir. 2001) (discharge less than three months after complaint filed and less than one month after service upon employer established *prima facie* case); Sitar v. Indiana Dept. Of Transportation, 344 F.3d 720, 728 (7th Cir. 2003) (discharge more than three months after filing complaint). In Sitar, *supra*, the court further held that "even if we thought that there was insufficient evidence of causation..., lack of causation should not have been the district court's sole basis for granting summary judgment....[F]or a plaintiff proceeding under the indirect method, causation [is] no longer...a part of her prima facie burden." 344 F.3d at 729.

Ms. Fox engaged in protected participation when she wrote a letter to Mrs. Angline Destefano on January 25, 2000 regarding the Town's new policy of not allowing the Plaintiff to have more than 25 senior vouchers in her possession at any one time. For this letter, she received a written reprimand from the Defendant, Louis Pane. This "new" policy did not apply to the Plaintiff's predecessor nor to anyone else of which the

---

[1]
   "A plaintiff can establish a causal connection between statutorily protected activity and an adverse employment action through circumstantial evidence, such as the timing between the two events." Smith v. Riceland Foods, Inc., 151 F.3d 813, 819 (8th Cir. 1998).

Plaintiff is aware.

The question of whether the speech contained in her January 25, 2000 letter was a matter of public concern or a matter of personal interest is a question of law for the court's consideration. <u>Barton v. City of Bristol</u>, 294 F. Supp. 2d 184, 199 (D. Conn. 2003). It seems apparent that when a town employee writes a letter to a member of the *public* directly addressing an issue concerning Town business and/or policy which that person raised to the employee, then the contents of such correspondence concern itself with a matter of public concern.

It is of utmost importance to bear in mind that it is the actions of the Defendants *subsequent to* the Plaintiff's termination and later reinstatement that form the basis for her claims under both the First and Fourteenth Amendments.

After the Plaintiff employed the assistance of her labor union in successfully getting her job back and obtaining the unemployment compensation which the Defendant Town had opposed, the Defendants engaged in a pattern of abuse and retaliation against her which included:

1. Placing a reprimand in the Plaintiff's personnel file in response to her January 25, 2000 letter to a member of the public the contents of which were accurate and Constitutionally- protected.

2. Unreasonably requiring the Plaintiff to have no more than 25 voucher books in her possession when her predecessor was able to have a nearly unlimited supply. It was this requirement that led to the January 25, 2000 letter of explanation to Mrs. Destefano.

3. Suspending the Plaintiff for *60 days* for the mortal sin of dropping a

megaphone on the ground during an October 28, 2000 Halloween Scavenger Hunt.

4. Mayor Maturo reprimanding the Plaintiff for declining to work overtime without compensation.

5. Refusing to allow the Plaintiff to accept cash from the public in furtherance of her official job duties, irrespective of whether she incidentally preferred not to accept cash.

It becomes readily apparent that after her return to employment with the Town, the Defendants were out to get the Plaintiff. She was retaliated against and treated differently than other Town employees for the audacity of challenging the Town's omnipotence in firing her and for successfully doing so.

Attached to the Plaintiff's Memorandum of Law as Exhibit A are the Plaintiff's responses to the Defendants' Interrogatories, dated May 7, 2004. These responses provide detail with respect to the Plaintiff's contentions as found in her Complaint and amplify her claims against the Defendants concerning her claims of retaliation for engaging in protected speech and the denial to her of Equal Protection.

The Plaintiff has proven each of the elements in Cifra v. General Electric Co., cited above. She has shown that she engaged in protected participation or opposition of which her employer was aware and that her employer commenced a campaign of adverse employment action against her with a retaliatory motive.

In their Memorandum of Law in support of Motion for Summary Judgment, the Defendants mention several times that the Plaintiff gave deposition testimony wherein she states that she does not know why she was treated differently than other employees. This begs the question as to how anyone could ever know the subjective

motivations behind what people do, except if they were told directly by the actor that

"The reason for such action is......." It is simply not a part of human nature to explain in

advance of unlawful action the *reasons* for such action. We are therefore left to

examine the circumstances surrounding the unlawful action and make rational

inferences therefrom. Fortunately, <u>Smith v. Riceland Foods, Inc.</u> allows us to do just

that.

      For the foregoing reasons, the Defendants' Motion for Summary Judgment

should be denied.

                              THE PLAINTIFF,
                              CAROL FOX

By: _____
            Joseph M. Merly, Esq.
            John R. Williams and Associates, LLC
            51 Elm Street, Suite 409
            New Haven, CT 06510
            Telephone No.: (203)562-9931
            Fax No.: (203)776-9494
            Federal Bar No. CT 21266

CERTIFICATION

This is to certify that a copy of the foregoing was mailed, postage prepaid, this

23RDday of June,  2005 to the following counsel of record:

Hugh F. Keefe, Esq.
52 Trumbull Street
P.O. Box 1612
New Haven, CT 06596


Joseph M. Merly, Esq.

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CAROL A FOX | : | CIVIL ACTION NUMBER |
| V. | : | 3:02CV01540 (WWE) |
| TOWN OF EAST HAVEN,<br>JOSEPH MATURO, JR.,<br>LOUIS PANE, FRANK GENTILESCO,<br>and LOUIS CRISCUOLO | : | MAY 7, 2004 |

### PLAINTIFF'S RESPONSES TO DEFENDANTS' INTERROGATORIES

The Defendants hereby request, pursuant to Rule 33 of the Federal Rules of Civil Procedure, that the Plaintiff, Carol A. Fox, provide responses separately, fully, in writing and under oath to the following interrogatories within (30) days of the date hereof. Moreover, the Defendants request that the Plaintiff supplement her responses to the time of trial.

### INTERROGATORIES

1. Please state your name, address, date of birth, social security number, current occupation and employer's name and address.

### ANSWER:

**Carol A. Fox**
**607 Longfellow Drive**
**Branford, CT 06405**
**11/04/42**
**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**
**Administrative Assistant**
**Athletic Complex**
**71 Hudson Street**
**East Haven, CT 06512**

2. Please describe your employment with the Town of East Haven, including the dates of your employment, job title/ position, supervisor's name, daily

responsibilities, hours scheduled to work, and the amount of your salary and bonuses.

**ANSWER:**

**Executive Secretary to the Finance Director 1987 to the present.**
**1987-1992: Paul R. Karbauski, Director of Finance,**
**1992-1994: Barbara Avard, Finance Director,**
**1994-1995: Carl Tomchick, Finance Director,**
**Hours were 9:00 a.m. to 5:00 p.m.**
**Salary 1987: $11,000 +/- $1K per year longevity on anniversary;**
**1996: $22,000 +/- $1K per year longevity on anniversary.**
**Please see job description attached duties and job description for Administrative**
**Assistant - Recreation/Athletic Department duties.**
**Current salary: approximately $32K, bonus based on sliding scale, currently $500**
**per annum.**

3.    Please describe your relationship with the Defendant, Frank Gentilesco, including how and when you met.

**ANSWER:**

**When I finally won my job back and grieved the denial of my tenure and vacation time due and at further and more vicious grievance encounters.**

4.    Please describe your relationship with the defendant, Louis Criscuolo, including how and when you met.

**ANSWER:**

**Met at campaign headquarters for Bob Norman on many occasions and affairs during Mayor Norman's electoral campaigns, dinner dances and innaugurals. Was delighted when I found I would be working with him in the Finance Department when I was hired 01/05/87. We had had a good working and sometimes social relationship until approximately 1988 or 1989.**

5.    Please describe your relationship with the defendant, Joseph Maturo, Jr., including how and when you met.

**ANSWER:**

**Met when I was Executive Secretary Finance Director, 1992. He had come to**

Finance to get his comp check, he collected for a back injury for the Fire Department. Heard Bravard screaming at me for something and sat with me a while after she stormed out and told me I shouldn't be subjected to this type of verbal and near physical abuse. Later when I had been dispatched to the Ice Rink, he was a frequent visitor. Told all of us, Joseph Badamo, Sal Corvi, Ted Musco, Frank Butler and myself, that there would be a lot of changes made starting with "getting rid of" Louis Pane and some fo the maintenance staff. Also, he would tighten up security beginning with getting a "real safe" instead of a toy. (Someone previously had tried breaking into the safe by 1) trying to remove the hinge pins and 2) by smashing the dial so hard we could never close it properly again.) Sal Corvi was there the morning we discussed it. The office doors were still locked when I arrived the day of the attempted break in and I had to use my key to get in as usual. This was reported to the police department.

6.    Please describe your relationship with the defendant, Louis Pane, including how and when you met.

**ANSWER:**

June 1996 when I came to the Ice Rink. I had met him before when he first became Director and had to come to the Finance Department for a meeting or something. I remember introducing him to the Finance Director Carl Tomchick. We do not have a good working relationship and doubt that, given Pane's penchant and drive to control and mistrust, we ever will.

7.    Please state the exact basis for the charges brought against you ultimately leading to your termination on August 15,1997. In this regard, please specify what allegations were made against you and who made such allegations.

**ANSWER:**

Theft, forgery and dishonesty. It was alleged I had stolen $640 +/- , that I had forged Purchase Orders and was dishonest. Charges were made by Louis Pane, Louis Zullo, Paul Rizza, Louis Criscuolo and others. As a result I was arrested, fingerprinted and booked at the East Haven Police Department. I was arrested in front of many of the staff and offices I have worked with for years - this was very painful and humiliating for me and my family who have friends in East Haven and surrounding areas. I was escorted out of the Rec Department and terminated without access to counsel or being advised of my rights. Also, I was never advised to seek counsel before, during or after said investigation was underway.

It was never divulged I was a prime suspect or the "criminal". No one else with knowledge of money in the safe were ever interrogated to the extent nor subjected to suspicion I was. There had been thefts of various amounts of money ranging from $5,000 - 23,000 in the years prior to my coming to the Rink and no one was ever suspected, terminated, arrested, booked and prosecuted as I was. The afternoon I was terminated by Zullo and others I was deemed guilty as a result of Zullo's investigation.

After being forced by the Town's unrelenting persecution of me and determination that I remain terminated, even though the now Mayor, Joseph Maturo and Art DeSorbo and all my "friends and colleagues" assured me not to worry, that I would soon be back at my job, they, on the assumption that it was in the best interest of the Town to take this on to the Superior Court in New Haven. By the time all was said and done I was totally overwhelmingly in debt and had, by a hair's breath, nearly lost my home.

8. Please describe in detail each specific act you claim that the defendants engaged in jointly in retaliation for your exercise of your constitutional rights as alleged in Paragraph 11(A) of your Complaint dated August 28, 2002. In this regard, please identify which defendants engaged in the act, when such act occurred, how you know such act was done in retaliation for your exercise of your constitutional rights, and which specific First Amendment right had you exercised.

ANSWER:

My right to Freedom of Speech, pursuit of justice and in seeking restitution of my tenure, vacation time, by way of denial of these by the present administration for vacation and tenure especially with respect to seniority and longevity. They determined I was "re-hired" and not reinstated as the fiasco in Wethersfield determined. A clarification of the award was demanded by the present administration.

9. Please identify all persons who may have witnessed such acts as described in your response to Interrogatory No.8.

ANSWER:

Salvatore Corvi, President Town Hall Employees Union, all grievances were made to him and then to Tom Fascio, State Rep for the Union. All Finance Department personnel and Rink employees by way of the written directive by Art DeSorbo that limited the number of vouchers could only be held by me and only $20 amunts of

cash for vouchers could be taken. Larger amounts would be paid for in cash. Pat Cretella, Acct. Clerk and also Mayor's cousin, had taken my job at the Rink during my termination and was allowed unlimited vouchers and receipts of cash. So she, by this act is also a witness. Anne Sontello, who was and still is selling vouchers, is allowed to take cash, checks, money orders along with hundreds of dollars worth of vouchers home with her to keep until her next time she is in the office. This is a blatant violation of the Union Contract, as no two people are to be doing the same work.

10.    Please describe in detail the specific acts you claim in Paragraphs 11(B), 11(C),12, 22 and 24 of your Complaint dated August 28,2002 constituted disparate treatment, including when such acts occurred, who conducted said acts, and all persons (name and address) who witnessed said acts.

**ANSWER:**

By immediately implementing new policies regarding the amount of vouchers and cash that could be received by me. Please see my answers to Nos. 7 and 8 above.

11.    Please identify by name and address all employees you claim in response to Interrogatory No.10 and in Paragraphs 11(B),11(C), 12, 21, 22, and 24 of your Complaint dated August 28,2002 were similarly situated to you but were treated differently than you.

**ANSWER:**

Anne Santello, Jessica Porlotto, Liz Spano, Cathy, Jim Masotta, Tim Burns, Sal Popolizio, Al Corfra, Jim Dowd. Any and all other Program Instructors, Lou Pacelli, Mike Moscato: are taking cash at their programs and not being reprimanded and allowed to take it home with them, exchange it for a personal check then bring it into the Rink for deposit by me with any checks they had received in payment.

Not one of the Rink Maintenance personnel will execute any work orders or duties I may assign them. Lou Pane has supplied them with cell phones (initially) and instructed them and any vendors to call him and no one is to purchase or order any supplies, etc., without his express okay. This is part of my job description. No one in the entire history of the management has ever had a 60 day suspension without pay imposed on them.

Anne Santello accepts cash on Sundays, holidays.

**Jessica Porlotto took cash Friday Camp registration and extended Day Care as did and still does Elizabeth Franco Spano and her Assistant Cathy, with full knowledge of Pane, Rizzo, Cricuolo and the entire Administration.**

12.    Please describe in detail how each employee identified in your response to Interrogatory No.11 was similarly situated to you, how each was treated differently than you, when such different treatment took place, by whom such employee was treated  differently, and all persons (name and address) who witnessed this different treatment.

ANSWER:

**Anne Santello, greater amount of all vouchers, can and does accept cash on Sundays, holidays and special Public Skates.  Witnessed by many seniors, residents, non-residents who come in to buy vouchers from me so as to avoid crowds during above skate times.  They are always shocked when I tell them of the Mayor's "no cash" policy and always tell me Anne does, the girl who sells them on Sundays, etc.  I ask "Anne Santello?" and they always answer "Yes", no one else sells them.**

13.    Please state on what date the defendant, Louis Criscuolo, allegedly gave you only 25 vouchers for recreational services at the Town's Veterans Memorial Ice Rink as alleged in Paragraph 12 of your Complaint dated August 28, 2002?

ANSWER:

**This began after the voucher mixup in July of 1999.  I had an impacted tooth and no sick time and I was taking pain medication.  This was a particularly hot day and I had many seniors come to buy tickets in advance for vacation.  I had met Joe Maturo in the Town Hall and he followed me into the copy room to ask why I had this "attitude" towards him.  I told him I had a bad tooth, he told me to go home.  I told him no sick time, he shrugged his shoulders.  Shortly thereafter I came back to the Rink.  Criscuolo, Rizza came next day and wanted to see Pane. I told them he was not here.  They said they wanted to see my receipt book.  I showed it to Paul and pulled up my entries on my computer for voucher sales for that month, Paul commented on excellence of my work.  Criscuolo confiscated receipt book and told me I'd get it back when he was done with it.  I told him I needed it because that is what I use and the only one I use to enter reserve history on computer.  It took him and the staff at Finance more than a month to discover no fraud or that instead some numbers were transposed.**

14.    Please state in detail the basis of your claim in Paragraph 12 of your Complaint dated August 28, 2002 that Louis Criscuolo's distribution of 25 vouchers for recreational services at the Town's Veterans Memorial Ice Rink was arbitrary and done to humiliate you.

**ANSWER:**

**Prior to this time the Rink Rec office was allowed an entire oblong box of each voucher denomination. Approximately 500-1,000 +/- of these, along with money were brought home and kept with her by my predecessor Sandra Depoto. Joseph Badamo, Sal Corvi and Ted Musco have all affirmed this to me not once but on numerous occasions.**

**Until that time I always had sufficient number of vouchers, especially for seniors who ice skate and particularly for Barbara Corso's Adult Aerobics. Criscuolo made it extremely difficult for seniors to buy the desired amount of tickets they wanted resulting in some of them taking their frustration loudly, verbally and in some instances threateningly, out on me. If I attempted to explain, Pane was called or the Mayor contacted and I was reprimanded for being rude. I do not recall any of the seniors by name and address who were unable to buy vouchers.**

15.    Please describe the basis of your claim in Paragraphs 12 and 13 of your Complaint dated August 28, 2002 that citizens complained to you and/ or verbally abused you, including when such complaints and/ or abuse occurred, the names and addresses of the citizens who complained and/ or abused you, the contents of the complaints, how and where you were abused, the names and addresses of any witnesses to such complaints and/ or abuse, and who you reported such incidents to.

**ANSWER:**

**Unfortunately, Mrs. DeStefano came when I didn't have enough Senior vouchers to fulfill her request. She became angry when I, a) told her she would have to return next day after I had gotten more from Finance, and b) when I informed her of the Mayor's "no cash" policy. Lou Pane happened to be in during this episode and he tried explaining to her. She then picked up her wallet and made as if she would fling it at me but checked herself in time. She came back and verbalized some more. Pan was uncharacteristically sympathetic to me and stated "people like her should get help." However, Pane found out some time later (at the Mayor's inauguration) that Mrs. DeStefano was New Haven's Mayor John DeStefano's mother and he declined to back any complaints I made. After sending and giving Pane a cc: of the letter, which he thought was an excellent**

one (before he discovered Mrs. DeStefano's identity), he complimented me and filed it. When Maturo heard of it I found myself with a written warning from Pane about "giving out too much internal information". Further disciplinary action was threatened if this occurred again in direct countermand of my constitutional right of Free Speech.

16.   Please identify, by name and address, other employees who received more than 25 vouchers for recreational services at the Town's Veterans Memorial Ice Rink as you allege in Paragraph 12 of your Complaint dated August 28, 2002.

**ANSWER:**

**Anne Santello**
**52 Pondview Terrace**
**East Haven, CT 06512**

**and my predecessor, Sandra DePoto, East Haven, CT.**

17.   Please identify when the employees identified in your response to Interrogatory No.16 were given more than 25 vouchers for recreational services at the Town's Veterans Memorial Ice Rink and by whom they were given such vouchers.

**ANSWER:**

**From the time she was hired to the present time by the then Account Supervisor Louis Criscuolo and the present Account Supervisor Sharon Costello.**

18.   Please describe in detail the specific act or acts you claim in Paragraph 14 of your Complaint dated August 28,2002 demonstrate(s) a conspiracy on the part of the defendants, Joseph Maturo, Jr. and Louis Pane, in retaliation for the letter you described in Paragraph 13 of said Complaint, including when such acts occurred and all persons (name and address) who witnessed said acts.

**ANSWER:**

**Direct countermand of my constitutional right of freedom of speech, given the fact that Pane at first approved my letter and disapproved of Mrs. DeStefano's action before and until he learned at Mayor Joe Maturo's inaugural of her relationship to the Mayor of New Haven and did a complete 360° once he knew, warning me of disciplinary action.**

19.    Please state the basis of your claim in Paragraph 16 of your Complaint dated August 28, 2002 that you were scheduled to be in charge of the Halloween scavenger hunt on October 28, 2000.

**ANSWER:**

**Lou Pane was going out of Town and, besides the fact that he directly informed me that I would be in charge, it is in my job description and part of my duties as Administrative Assistant.**

20.    Please describe in detail how you were countermanded by Theodore T. Musco, Jr. as alleged in Paragraph 16 of your Complaint dated August 28,2002

**ANSWER:**

**I did not want any children on the field before I or the Mayor spoke. Also, I directed that after the Mayor threw the candy only the toddlers to 3 year olds be allowed on the field.**

21.    Please identify by name and address all persons who may have witnessed Theodore Musco countermand you and/ or Joe Maturo's alleged berating of you as alleged in Paragraphs 16 and 17 of your Complaint dated August 28,2002.

**ANSWER:**

**Everyone who was there with their children that day. My other co-workers, Sal Corvi. Sal asked what went on when I came inside crying and he and Bob Vedder (I believe) told me he (the Mayor) couldn't fire me without a hearing and that what he did was in violation of the Union Contract.**

22.    Please describe in detail the act or acts you claim in Paragraph 22 of your Complaint dated August 28, 2002 constitute different treatment, including when such act or acts occurred, who conducted said act or acts, and all persons (name and address) who witnessed said act or acts.

**ANSWER:**

**Please see my answer to Nos. 15 and 28.**

23.    Please identify by name and address those employees you claim were similarly situated to you but were treated differently as described in your response to

Interrogatory No.22, including how they were similarly situated, how they were treated differently, when they were treated differently, by whom were they treated differently, and all persons (name and address) who may have witnessed all this different treatment.

**ANSWER:**

**Please see answer No. 18.**

24.    Please list each medical report received by you or your attorney relating to your alleged injuries or conditions, including your alleged emotional distress, by stating the name and address of the treating doctor or other health care provider, and of any doctor or other health care person you anticipate calling as a trial witness, who provided each such report and the date thereof.

**ANSWER:**

**All medicals have been requested from my treaters and will be provided when received. I treated with:**

**Dr. Thomas Campbell, 389 Orange Street, New Haven, CT 06510;**
**Dr. Joseph Brennan, 11 Harrison Street, Branford, CT 06405;**
**Dr. David I. Riccio, 310 Main Street, East Haven, CT 06512;**
**Dr. Richard Lewis, 58 Trumbull Street, New Haven, CT 06510;**
**Dr. Norman Kaplan, 450 Boston Post Road, Guilford, CT 06437;**
**Dr. Akumbakam P. Purushothem, 46 Prince Street, New Haven, CT 06511;**
**Hospital of St. Raphael, 1450 Chapel Street, New Haven, CT 06511;**
**John Dobbins, M.D., 40 Temple Street, New Haven, CT 06511.**

25.    Please list each item of expense which you claim to have incurred as a result of the incidents alleged in your Complaint dated August 28, 2002, the amount thereof and state the name and address of the person or organization to whom each item has been paid or is payable.

**ANSWER:**

**Loss of one year and one day's pay: $31,000 +/-;**
**Medical Insurance: $299.89 per month for 3 months;**
**Lawyer for criminal case: $1,000 approx.;**

**Borrowed money in excess of $7,000;**
**Co-pays for medication: in excess of $500 - 1,000 approx.;**
**Not made whole, sought unemployment for approx. 60 day suspension without pay: Biweekly pay $3,000 +/-**

26.    If, during the ten year period prior to the date of the incidents alleged in your Complaint dated August 28, 2002, you were under a doctor's or other health care person's care for any injuries or conditions which were in any way similar or related to those identified in your Complaint, please identify on what date and in what manner you sustain such injuries/ conditions, the nature and extent of such injuries/ conditions, who treated you for such injuries/ conditions and when and where such treatment(s) took place.

**ANSWER:**

**I have never been treated this way before so I could not have similar injuries or conditions.**

27.    If, since the date of the incidents alleged in your Complaint dated August 28, 2002, you were involved in any incident in which you received injuries or suffered conditions similar or related to those identified in your Complaint, please identify on what date and in what manner you sustained such injuries/ conditions, the nature and extent of such injuries/ conditions, who treated you for such injuries/ conditions and when and where such treatment(s) took place

**ANSWER:**

**Not applicable.**

I hereby certify that I have reviewed the above Interrogatories and responses thereto and that they are true and accurate to the best of my knowledge and belief.

_____
Carol A. Fox

Subscribed and sworn to before me this 5th day of May, 2004.

_____
Notary Public
My Commission Expires June 30, 2004

LYNCH, TRAUB, KEEFE AND ERRANTE, P. C.   ATTORNEYS AT LAW
52 TRUMBULL STREET  P.O. BOX 1612   NEW HAVEN, CONNECTICUT 06506-1612
TELEPHONE (203) 787-0275   FACSIMILE (203) 782-0278

17

THE PLAINTIFF, CAROL A. FOX

BY: _____
JOHN R. WILLIAMS (ct00215)
54 Elm Street
New Haven, CT 06510
203/562-9931
FAX: 203/776-9494
E-Mail: jrw@johnrwilliams.com
Her Attorney

## CERTIFICATION OF SERVICE

On the date above stated, a copy hereof was mailed to

Attorney Nancy A. Fitzpatrick
Hugh F. Keefe, Esq.
P. O. Box 1612
52 Trumbull Street
New Haven, CT 06506-1612

_____
JOHN R. WILLIAMS