UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|                          |   |                          |
|--------------------------|---|--------------------------|
|                          | : |                          |
| CAROL A. FOX             | : |                          |
|                          | : |                          |
|                          | : |                          |
| v.                       | : | CIV. NO. 3:02CV1540 (WWE)|
|                          | : |                          |
| TOWN OF EAST HAVEN,      | : |                          |
| JOSEPH MATURO, JR.,      | : |                          |
| LOUIS PANE,              | : |                          |
| FRANK GENTILESCO, and    | : |                          |
| LOUIS CRISCUOLO          | : |                          |


RECOMMENDED RULING ON MOTION FOR SUMMARY JUDGMENT

Carol Fox brings this civil rights action pursuant to 42 U.S.C. §1983, against her employer, Town of East Haven, and four co-workers, arising out the termination of her employment in August 1997 and subsequent reinstatement.  Plaintiff alleges she was retaliated against in violation of the First Amendment, for speaking out on matters of public concern and for union activity in challenging her discharge and denial of unemployment benefits. She also alleges that defendants subjected her to disparate treatment in the workplace in violation of the Equal Protection Clause of the Fourteenth Amendment to the United State Constitution.

Pending is defendants' Motion for Summary Judgment **[Doc. #43].** For the reasons that follow, summary judgment is **GRANTED.**

STANDARD OF LAW

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law.  See  D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998);  see also  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, (1986).  The non-moving party may not rely on conclusory allegations or unsubstantiated speculation.  See D'Amico, 132 F.3d at 149.  Instead, the non-moving party must produce specific, particularized facts indicating that a genuine factual issue exists. See  Wright v. Coughlin, 132 F.3d 133, 137 (2d Cir. 1998).  To defeat summary judgment, "there must be evidence on which the jury could reasonably find for the [non-movant]."  Anderson, 477 U.S. at 252.  If the evidence produced by the non-moving party is merely colorable or is not significantly probative, summary judgment may be granted.  See id. at 249-50.

Pursuant to D. Conn. L. Civ. R. 56(a)(3),

> Each statement of material fact in a Local Rule 56(a)1 Statement by a movant or by an opponent in a Local Rule 56(a)2 Statement, and each denial in an opponent's Local Rule 56(a)2 Statement, must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial. The affidavits, deposition testimony, responses to discovery requests, or other documents containing such evidence shall be filed and served with the Local Rule 56(a)1 and 2 Statements in conformity with Fed. R. Civ. P. 56(e). Counsel and pro se parties are hereby notified that failure to provide specific

2

> citations to evidence in the record as
> required by this Local Rule may result in
> sanctions, including, when the movant fails
> to comply, an order denying the motion for
> summary judgment, and, when the opponent
> fails to comply, an order granting the
> motion.

A party may not create a genuine issue of material fact by presenting contradictory or unsupported statements.  See Securities & Exchange Comm'n v. Research Automation Corp., 585 F.2d 31, 33 (2d Cir. 1978).  Nor may he rest on the "mere allegations or denials" contained in his pleadings.  Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995).  See also Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993) (holding that party may not rely on conclusory statements or an argument that the affidavits in support of the motion for summary judgment are not credible).  A self-serving affidavit which reiterates the conclusory allegations of the complaint in affidavit form is insufficient to preclude summary judgment.  See Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888 (1990).  "The nonmovant, plaintiff, must do more than present evidence that is merely colorable, conclusory, or speculative and must present concrete evidence from which a reasonable juror could return a verdict in her favor."  Page v. Connecticut Department of Public Safety, 185 F. Supp. 2d 149, 152 (D. Conn. 2002) (citations and internal quotation marks omitted).

If a nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof at trial, then summary judgment is

appropriate.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  If the plaintiff fails to provide any proof of a necessary element of the plaintiff's case, then there can be no genuine issue as to any material fact.  Id.  A complete failure to provide proof of an essential element renders all other facts immaterial.  Id.  see also Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995) (movant's burden is satisfied if it can point to an absence of evidence to support an essential element of nonmoving party's claim).


FACTS

     Based on defendants' Local 56(a)(1) Statement and exhibits[1] [doc. #44, 45] and plaintiff's Local 56(a)2 Statement and exhibits[2] [doc. #55, 56], the following facts are undisputed.

1.   Plaintiff Carol Fox is employed as the Administrative Assistant to the Director of Recreation for the Town of East Haven. Def. 56(a)(1) and Pl. 56(a)(2) Local Stat. at ¶1.

---

[1]Defendants' Exhibit A is a copy of selected pages from Carol Fox's deposition dated May 28, 2004. Exhibit B is a copy of the Information for the prosecution of Carol Fox in the State of Connecticut Superior Court. Exhibit C is a copy of the Arrest Warrant Application for Carol Fox. Exhibit D is a copy of selected pages from Carol Fox's continued deposition dated April 19, 2005. Exhibit E is a copy of selected pages from Carol Fox's continued deposition dated December 13, 2004. Exhibit F is a copy of a letter to Angeline DeStefano from Carol Fox, dated January 25, 2000. Exhibit G is a copy of a letter to Carol Fox from Louis Pane, Director of Recreation, dated February 1, 2000.  Exhibit H is a copy of selected pages from plaintiff's responses to defendants' interrogatories, dated May 7, 2004.

[2]Plaintiff's Exhibit A is a complete copy of plaintiff's responses to defendants' interrogatories dated May 7, 2004.

2.   At all relevant times, defendant Louis Criscuolo was the
     Accounting Supervisor for the Town of East Haven.  Compl. at
     ¶4.

3.   At all relevant times, defendant Joseph Maturo, Jr., was the
     Mayor of East Haven.  Compl. at ¶4.

4.   At all relevant times, defendant Louis Pane was East Haven's
     Director of the Recreation Department and plaintiff's direct
     supervisor.  Id. at ¶2.

5.   On August 15, 1997, plaintiff's employment as an
     administrative assistant was terminated on the grounds of
     theft, forgery and dishonesty.  Id. at ¶3; Compl. at ¶7.

6.   The discharge occurred following plaintiff's arrest for
     second degree larceny (defrauding a public community),
     related to missing funds at the Recreation Department.  Def.
     Ex. A at 48; Def. Ex. B; Def. Ex. D.

7.   Plaintiff sought reinstatement pursuant to the collective
     bargaining process with her union.  Compl. ¶8.

8.   On December 22, 1997, after a full evidentiary hearing, the
     Employment Security Appeals division of the Connecticut
     Department of Labor ordered defendant to pay plaintiff
     unemployment compensation benefits for the period of her
     unemployment.  Compl. ¶10.

9.   On or about, September 14, 1998, after a full evidentiary
     hearing, the Board of Mediation and Arbitration of the
     Connecticut Department of Labor ordered defendants to
     reinstate plaintiff to her position as Administrative

Assistant.[3]  Id. at ¶4; Compl. at ¶8.

10. Plaintiff testified that she has never been punished by any of the defendants for joining her labor union. Def. 56(a)(1) and Pl. 56(a)(2) Local Stat. at ¶10.[4]

11. Plaintiff testified that the defendants did not prevent her from challenging the basis of her employment termination and did not prevent her from obtaining representation by her union. Def. Ex. E at 82-83.

12. Plaintiff testified that defendants Pane, Gentilesco, Maturo and Criscuolo did not punish her for challenging the Town's refusal to provide her with unemployment compensation. Plaintiff stated "because I was not at the rink.  I was fired; I was out." Def. Ex. D at 8-9.

No-Cash Policy

13. Defendants instituted a policy whereby plaintiff was not allowed to accept cash payments from the public. Compl. at ¶24.

---

[3]Plaintiff argues in her opposition brief that she "employed the assistance of her labor union in successfully getting her job back and obtaining the unemployment compensation which the Town opposed . . . ." [Doc. #55 at 5]. However, there is no allegation in the complaint that plaintiff participated in union activity to challenge the denial of unemployment benefits.  The only union activity alleged in the complaint is contained in paragraph 8 regarding plaintiff's evidentiary hearing for reinstatement of her employment.  Compl. ¶8.

[4]Plaintiff "contends that she was punished for joining *with* her labor union in fighting some of the Defendants' actions against her." [Doc. #56 at ¶10 citing Pl. Ex. A].

14. The no-cash policy in question was issued and implemented on July 20, 1999. <u>Id.</u> at ¶20.[5]

15. Plaintiff testified that the no-cash policy applies to "any employee handling revenue." Def. Ex. A at 104.

16. She testified, "I like the checks. Since I got there I have been after Louie [Pane] to let me take checks or money orders, and I didn't like handling cash." Def. Ex. D. 21-22.


<u>Twenty-Five Voucher Book Limit</u>

17. When plaintiff returned to her job, defendant Criscuolo instituted a policy whereby plaintiff was not allowed to possess more than twenty-five (25) voucher books for sale to the public at any one time.[6] Compl. at ¶12.

18. Plaintiff testified that she does not have personal

_____

[5]Plaintiff states she is "[u]nable to agree or disagree" but offers no contrary evidence.

The July 20, 1999 Memorandum, entitled "No Cash Policy," from defendant Louis Pane to Paul Rizza, states in relevant part,

> Effective immediately, I have directed my Administrative Assistant and Ann Santello that our department will no longer accept cash for any of our recreation programs. I feel that check payments will always link our two departments with an audit trail that can be looked at in a time of question.

Doc. 59, Ex. A.

[6]"Among the services provided to the public by the Town of East Haven is the sale of vouchers for recreational services at the Town's Memorial Ice Rink. These vouchers are, variously, "Senior Vouchers," "Resident Vouchers" and "Nonresident Vouchers."" Compl. at ¶12.

knowledge as to whether another Department of Recreation employee has a limit on the number of vouchers she can have to sell.  Id. at ¶8.

## DeStefano Letter, January 2000

19.  On January 25, 2000, plaintiff wrote a letter to Mrs. Angeline DeStefano explaining why she was unable to fulfill Mrs. DeStefano's request for vouchers.  Plaintiff wrote,

> I am, at this time, endeavoring to have the amount of Senior Voucher Books (which as I explained to you on Monday, is 25 senior books, which I must wait for until Louis Criscuolo, who is in charge of them, is ready to give them to me) increased.  I know that my predecessor was allowed to have in excess of 100 books of all at a time, however, this has changed since I have been reinstated and only 25 senior books are allowed at one time.

Def. Ex. F.

20.  On February 1, 2000, defendant Pane sent a written reprimand to plaintiff regarding her letter to Mrs. DeStefano on the grounds that there "is no reason to inform the public of internal procedure."  Def. Ex. G.

21.  Plaintiff testified that she is not aware of any other employees sending letters to citizens similar to the one sent to Mrs. DeStefano. Def. 56(a)(1) and Pl. 56(a)(2) Local Stat. at ¶12.

## Halloween 2000 Scavenger Hunt

22.  Plaintiff was disciplined as a result of her actions at the Halloween 2000 Scavenger Hunt because the defendants thought

she acted inappropriately.  Id. at ¶6.

23.  During her deposition, plaintiff admitted that, from the defendants' point of view, she had behaved inappropriately at the Halloween 2000 Scavenger Hunt.  Def. Ex. A at 151.

24.  Plaintiff testified that she is not aware of any other Town employee being involved in an incident similar to her incident at the Halloween 2000 Scavenger Hunt.  Id. at ¶¶ 7, 13.

25.  Plaintiff also testified that she is not aware of any employee being disciplined for similar incidents and/or behavior at events, such as the Halloween 2000 Scavenger Hunt.  Id. at ¶5.

Defendant Frank Gentilesco

26.  At all relevant times, defendant Frank Gentilesco was the Assistant Director of Administration and Management for the Town of East Haven.  Compl. at ¶4.

27.  Frank Gentilesco has not treated plaintiff differently from other employees.[7]  Id. at ¶15.

---

[7]Plaintiff disagrees with this statement and cites to plaintiff's Ex. A, which is a copy of plaintiff's May 7, 2004, responses to defendants' interrogatories.  Plaintiff offered no specific citation to this ten (10) page document.  The Court found only one response referencing Frank Gentilesco.  Interrogatory #3 states, "Please describe your relationship with the Defendant, Frank Gentilesco, including how and when you met."  Plaintiff answered, "When I finally won my job back and grieved the denial of my tenure and vacation time due and at further and more vicious grievance encounters."  The Court found no other references to this defendant in plaintiff's responses.

At her deposition, plaintiff testified, in relevant part,

Q: Is there anything you can testify to specifically in

28. Plaintiff has not been present at <u>other</u> employees' grievance hearings where Frank Gentilesco has represented the Town of East Haven's interests. <u>Id.</u> at ¶16.

<u>Overtime</u>

29. Plaintiff testified that she has never refused to work overtime when asked to do so. 56(a)(1) and Pl. 56(a)(2) Local Stat. at ¶17.

30. Plaintiff testified that she has been fully compensated for any overtime hours she has worked for the Town of East Haven. <u>Id.</u> at ¶18.

---

terms of Frank Gentilesco alone that he has treated you differently than you have seen him treat other employees of the Town?

A: I don't think I ever commented on Frank treating me differently. Except, of course, when we were in the grievance hearing. We did have different feelings about when I had been put on leave without pay by the mayor for the scavenger hunt and there were pretty hard feelings.  For the most part, Frank, if I asked for anything, he would try to accommodate me.  I won't say it is in a friendly manner, but he does try to accommodate me.  He is not patronizing like some other people.

Q: In terms of Frank Gentilesco, the only time you have really been at odds with him, shall we say, is at the grievance hearings when he is taking the Town's side and you are bringing your grievance.

A: As far as I can recollect.

Q: Have you ever been present for grievance hearings of other employees that Frank Gentilesco has been defending the Town?

A: No.

Pl. Ex. D. at 16-17.

<u>Disparate Treatment</u>

31.  At her deposition, plaintiff was asked,

> Q: Why is it you think that you are being
> treated differently by the defendants?
>
> A: There have been many instances of
> differential treatment to other employees in
> regard to myself.
>
> Q: Why do you think that is?
>
> A: I don't know.
>
> Q: For instance, with Louis Pane, why do you
> think he would treat you differently than,
> for instance, Ann Santello you had mentioned
> previously in deposition, why would you think
> he would treat you differently?
>
> A: That I was not his choice for his
> administrative assistant. They would rather I
> didn't - that I had not come to the ice rink.
> I had to bump the predecessor. I made
> everybody a little angry.

Def. Ex. D at 4-5.

32.  Plaintiff is not aware of ways in which she is treated

differently by the defendants in comparison to Town

employees outside the Department of Recreation.[8]  <u>Id.</u> at

---

[8]Plaintiff disagrees with this statement and cites to her
deposition transcript Def. Ex. D at 11-12, which states,

> Q: I am asking you what those rules are that are
> different in comparison to other employees.
>
> A: You mean Town employees or rink employees?
>
> Q: Town employees.
>
> A: As regards to Town employees, I don't know.  Rink
> employees, yes.  They are allowed to do more or less
> what they want to do. . . .

¶14.

33. Plaintiff is unaware of the Town of East Haven and/or the
individual defendants treating other employees as she claims
to have been mistreated.  Id. at ¶19.

DISCUSSION

Plaintiff Carol Fox, an employee of the Town of East Haven,
brings this civil rights action pursuant to 42 U.S.C. §1983
against the Town and town officials for their alleged violation
of the First Amendment and Equal Protection Clause to the
Fourteenth Amendment to the United States Constitution.[9]

Defendants move for summary judgment, pursuant to Fed. R.
Civ. P. 56, seeking dismissal of Fox's complaint in its
entirety.[10]

---

Def. Ex. D at 12.

[9]"To state a claim under section 1983, the plaintiff must
allege the violation of a right secured by the Constitution and
laws of the United States, and must show that the alleged
deprivation was committed by a person acting under color of state
law." West v. Atkins, 487 U.S. 42, 48 (1988). Plaintiff alleges
a violation of the First and Fourteenth Amendments to the United
States Constitution. Defendants do not dispute that, during all
relevant times,  they were acting under color of state law.

[10]Specifically, defendants argue that summary judgment is
appropriate because (1) Fox cannot sustain an equal protection
violation; (2) the record establishes that plaintiff lacks any
evidence to support a Monell claim; (3) Fox cannot prove a First
Amendment violation or that an adverse employment action was
taken in retaliation for her challenging her termination and
denial of unemployment benefits; (4) defendants are entitled to
qualified immunity; and (5) plaintiff's claims based on the no-
cash policy are time-barred. [Doc. #44 at 10-19].

I.   <u>First Amendment Retaliation</u>

     A.   <u>Union Activity</u>

     Plaintiff argues that she was unconstitutionally retaliated against because she joined with her union in challenging the termination of her employment and denial of unemployment benefits.  She contends that the retaliatory conduct occurred after she was reinstated to her position as Administrative Assistant.  The retaliatory conduct alleged included: (1) reprimand for the DeStefano letter; (2) issuance of the twenty-five voucher book limit; (3) suspension of plaintiff for sixty (60) days for the Halloween 2000 Scavenger Hunt conduct; (4) reprimand by Mayor Maturo for refusing to work overtime without compensation; and (5) issuance of the no-cash policy. [Doc. #55 at 5-6].

     "There is no doubt that retaliation against public employees solely for their union activities violates the First Amendment." <u>Clue v. Johnson</u>, 179 F. 3d 57, 60 (2d. Cir. 1999).

     To state a claim under §1983 for retaliation in violation of the First Amendment, plaintiff must demonstrate:(1) the speech [or conduct] at issue was made as a citizen on matters of public concern rather than as an employee on matters of personal interest, . . . (2) he or she suffered an adverse employment action, . . . and (3) the speech was at least a substantial or motivating factor in the [adverse employment action] . . . . <u>Morrison v. Johnson</u>, No. 05-1369-CV, 2005 WL 3008414, *3 (2d Cir. Nov. 10, 2005) (quoting <u>Johnson v. Ganim</u>, 342 F.3d 105, 112 (2d

13

Cir. 2003)(brackets in original)(internal quotation marks
omitted)).  If plaintiff establishes these three factors,
defendants may, nevertheless, avoid liability by making either of
two showings.

> One way the government may prevail is by
> demonstrating by a preponderance of the
> evidence that it would have taken the same
> adverse action in the absence of the
> protected speech.  Alternatively, the
> government may show that plaintiff's speech
> was likely to disrupt the government's
> activities, and the likely disruption was
> sufficient to outweigh the First Amendment
> value of plaintiff's speech. If the
> government relies on the latter rationale the
> balance of interests indeed weighs in the
> government's favor, plaintiff may still
> succeed by proving that the adverse action
> was in fact motivated by retaliation rather
> than by fear of disruption.

Mandell v. The County of Suffolk, 316 F.3d 368, 384 (2d Cir.
2003).

Defendants argue that plaintiff has failed to establish all
three elements of a prima facie claim of First Amendment
retaliation.  The Court agrees.  Plaintiff is unable to
demonstrate that her speech was constitutionally protected
because the primary aim of her union challenge was the
reinstatement of her employment and unemployment benefits, which
is clearly not a matter of public concern.

For speech to be protected under the First Amendment, it
must first relate to "any matter of political, social or other
concern to the community." Connick v. Myers, 461 U.S. 138, 146
(1983); Cobb v. Pozzi, 363 F.3d 89 (2d. Cir. 2004) (holding "that
a public employee bringing a First Amendment freedom of

association claim must persuade a court that the associational conduct at issue touches on a matter of public concern.").   The determination of whether a particular instance of speech relates to a matter of public concern is a question of law for the court, and must be "determined by the content, form, and context of a given statement, as revealed by the whole record." Connick at 148.   In making its determination, the court should focus on the motive of the speaker, and attempt to discern whether the speech was calculated to redress personal grievances or whether it had a broader public purpose. See Lewis v. Cowen, 165 F.3d 154, 163-64 (2d Cir. 1999). The key inquiry is whether the statements were made by plaintiff in her role as a disgruntled employee or her role as a concerned citizen. Id.

Plaintiff alleges she joined with her union to challenge the termination of her employment and denial of employment benefits.  While "[t]here is no doubt that retaliation against public employees solely for their union activities violates the First Amendment," Clue v. Johnson, 179 F.3d 57, 60 (1999), it is clear, considering the record as a whole, that plaintiff's union activity related solely to efforts to reinstate her employment and obtain unemployment benefits.  See Ezekwo v. N.Y. City Health & Hosps. Corp., 940 F.2d 775, 781 (2d Cir. 1991) (noting that the fact that plaintiff's speech could be broadly construed to implicate matters of potential public concern did not alter the general nature of her statements which were personally motivated); see also Levich v. Liberty Cent. Sch. Dist., 361 F.

15

Supp.2d 151, 166 (S.D.N.Y. 2004) (Conner, J.) (finding that plaintiff school teacher's letter to parents, wherein he complained about the school district's decision to change his teaching assignment, was written in "his role as a disgruntled employee and not as a private citizen").  Plaintiff may not cast her personal work grievances in the light of public concern merely by offering a conclusory allegation that her speech or conduct is a matter of public concern.  Thorpe v. Luisi, No. 00 Civ. 3144(GBD), 2005 WL 1863671, *6 (S.D.N.Y. Aug. 4, 2005) (finding plaintiffs failed to set forth system-wide retaliation against employees' complaints of racial and sexual harassment and union activity). "Where an employee seeking First Amendment protection is 'not on a mission to protect the public welfare' but hopes merely to prosecute [her] own grievances, [she] has failed to implicate the public concern." Id. (quoting Ezekwo, 940 F.2d at 781). Plaintiff offers no evidence or argument that the union challenge to her discharge and denial of unemployment compensation advanced or was intended to advance a public interest.  The Court finds that "[a]ny motivation to advance a public interest was tenuous and incidental." Hanig v. Yorktown Central School District, 384 F. Supp. 2d 710, 722 (S.D.N.Y. 2005) (citations omitted).  Accordingly, plaintiff failed to state a cognizable First Amendment claim.

B.    DeStefano Letter

     For similar reasons, plaintiff's First Amendment retaliation
claim on the basis of speech must also fail.

     Plaintiff contends that she "engaged in protected
participation when she wrote a letter to Mrs. Angeline DeStefano
on January 25, 2000, regarding the Town's new policy of not
allowing the Plaintiff to have more than 25 senior vouchers in
her possession at any one time.  For this letter, she received a
written reprimand from the Defendant, Louis Pane.  This "new"
policy did not apply to the Plaintiff's predecessor nor to anyone
else of which the Plaintiff is aware." [Doc. #55 at 4-5].

> Whether an employee's speech addresses a
> matter of public concern must be determined
> by the "content, form, and context of a given
> statement, as revealed by the whole record."
> Connick v. Meyers, 461 U.S. 138, 147-48
> (1983).  To fall within the realm of "public
> concern," an employee's speech must satisfy
> two criteria.  It must relate to a matter of
> political, social or other concern to the
> community.  And the employee must speak "as a
> citizen upon matters of public concern," not
> simply "as an employee upon matters only of
> personal interest."  Id. at 147, Context as
> well as content matters.

Pappas v. Giuliani, 290 F.3d 143, 152 (2d Cir. 2002).

     The speech for which plaintiff was disciplined did not touch
on matters of paramount political or social concern to the
community. Rather the content of the speech merely explained
plaintiff's delay in providing senior vouchers to Mrs. DeStefano.
Viewed in its context, plaintiff's speech did not touch on
matters of public concern but, rather, only plaintiff's personal

17

interest.  The Town's internal procedure for distribution of
vouchers to its employees does not rise to the level of public
importance.  Plaintiff wrote, "I know that my predecessor was
allowed to have in excess of 100 books of all at a time, however,
this has changed since I have been reinstated and only 25 senior
books are allowed at one time."  Def. Ex. F.  Taken as a whole,
Ms. Fox's letter does not address matters of public concern, but
relates only to her personal employment grievance with the policy
change.  Pappas, 290 F.3d at 152-53 (citing Connick, 461 U.S. at
147-48).  Speech or conduct "personal in nature and generally
related to [one's] own situation" do not constitute protected
speech.  Ezekwo v. NYC Health and Hosps. Corp., 940 F.2d 775, 781
(2d Cir. 1991) (holding that a physician's complaints related
primarily to her own standing within a residency program were not
protected).

Plaintiff argues, "[i]t seems apparent that when a town
employee writes a letter to a member of the *public* directly
addressing an issue concerning Town business and/or policy which
that person raised to the employee, then the contents of such
correspondence concern itself with a matter of public concern."
[Doc. #55 at 5 (emphasis in original)].  As stated above,
plaintiff may not cast her personal work grievances in the light
of public concern merely by offering a conclusory allegation that
her speech or conduct is a matter of public concern.  Thorpe v.
Luisi, No. 00 Civ. 3144(GBD), 2005 WL 1863671, *6 (S.D.N.Y. Aug.
4, 2005)  Accordingly, her First Amendment speech claim  on the

18

basis of this letter must fail.

II.  <u>Fourteenth Amendment Violation</u>

Plaintiff alleges two bases for her equal protection claim. First, plaintiff alleges "[d]isparate treatment . . . in comparison to other similarly situated municipal employees in retaliation for her exercise of protected First Amendment rights, in violation of the equal protection clause of the Fourteenth Amendment to the United States Constitution."  Compl. at §C. Plaintiff also alleges disparate treatment "in comparison to other East Haven municipal employees similarly situated wherein the defendants have intentionally and maliciously treated the plaintiff in ways materially different from their treatment of other similarly situated employees in violation of the equal protection clause of the Fourteenth Amendment to the United States Constitution."  Compl. at §B.

The Equal Protection Clause requires that the government treat all similarly situated people alike.  <u>City of Cleburne v. Cleburne Living Ctr.</u>, 473 U.S. 432, 439 (1985) (citing <u>Plyler v. Doe</u>, 457 U.S. 202, 216 (1982).  In analyzing an equal protection claim, the Court must first determine what standard of review to apply.  The strict scrutiny standard should be applied if plaintiff alleges she was treated differently because of membership in a suspect class or because she exercised a fundamental right.  <u>Giano v. Cuomo</u>, No. 94-CV-809, 1998 WL 760262, *5 (N.D.N.Y. Oct. 28, 1998) (citing <u>San Antonio Indep.</u>

<u>Sch. Dist. v. Rodriquez</u>, 411 U.S. 1, 38-40 (1973)). Here, plaintiff alleges that she asserted her First Amendment rights.

The less rigorous "rational relationship" standard requires that plaintiff's treatment be rationally related to a legitimate governmental interest.  Plaintiff  asserts a "class of one" claim, in which she alleges that she was intentionally treated differently from others similarly situated, specifically East Haven municipal employees.  In this Circuit, to properly plead a "class of one" equal protection claim, plaintiff needs "to allege that [she was] 'intentionally treated differently from others similarly situation and that there is no rational basis for the difference in treatment.'" <u>African Trade & Info. Ctr. Inc. v. Abromaitis</u>, 294 F.3d 355, 362 (2d Cir. 2002) (quoting <u>Vill. Of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000)); <u>See</u> <u>Bd. Of Managers of Soho Int'l Arts Condo. v. City of New York</u>, No. 01CV1226 (DAB), 2004 WL 1982520, *20 (S.D.N.Y. Sept. 8, 2004) (quoting <u>Olech</u>, 528 U.S. at 564).

Defendants argue that plaintiff has offered no evidence on summary judgment to support her equal protection claim. The Court agrees. "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." <u>Goenaga v. March of Dimes Birth Defects Found.</u>, 5 F.3d 14, 18 (2d Cir. 1995) (citing <u>Celotex</u>, 477 U.S. at 322-23).

In the opposition to summary judgment, plaintiff appended

20

her responses to defendants' interrogatories, dated May 7, 2004, stating that "[t]hese responses provide detail with respect to the Plaintiff's contentions as found in her Complaint and amplify her claims against the Defendants concerning her claims of retaliation for engaging in protected speech and the denial of her Equal Protection." [Doc. #55].  Plaintiff offered no specific citation to her discovery responses or to other evidence in the record to support her equal protection claims.  "The 'specific citation' obligation of [Local Rule 56] requires counsel and pro se parties to cite to specific paragraphs when citing affidavits or responses to discovery requests and to cite to specific pages when citing to deposition or other transcripts or to documents longer than a single page in length . . . ."  D. Conn. L. Civ. R. 56(a)(3).  Plaintiff failed to comply with the Local Rule's "specific citation" requirement and failed to make any showing on an essential element of her equal protection claim with respect to which she has a burden of proof.  See Celotex Corp., 477 U.S. at 322-23. "When the defendant moves for summary judgment on the ground that there is an absence of evidence to support this essential element, the plaintiff's burden of producing such evidence in opposition to the motion is de minimus. Nonetheless, plaintiff cannot meet this burden through reliance on unsupported assertions.  Once the moving party has made a properly supported showing sufficient to suggest the absence of any genuine issue as to a material fact, the nonmoving party, in order to defeat summary judgment, must come forward with evidence that would be

21

sufficient to support a jury verdict in his favor." <u>Gonega</u>, 51 F. 3d at 18 (citations omitted). Here, defendants supported their motion with documents, deposition testimony and discovery responses to show that plaintiff could not sustain an equal protection claim at trial.   It is insufficient on summary judgment for plaintiff to rely solely on her argument "that she does not know why she was treated differently than other employees."[11] [Doc. #55 at 6]. A complete failure to provide proof of an essential element renders all other facts immaterial. <u>Id.</u>  With this standard in mind, the Court finds that plaintiff did not meet her burden of raising a material issue of fact in opposition to summary judgment. Accordingly, summary judgment is

---

[11]Plaintiff's complete argument in opposition to summary judgment on her equal protection claim states,

> In their Memorandum of Law in support of
> Motion for Summary Judgment, the Defendants
> mention several times that the Plaintiff gave
> deposition testimony wherein she states that
> she does not know why she was treated
> differently than other employees. This begs
> the question as to how anyone could ever know
> the subjective motivations behind what people
> do, except if they were told directly by the
> actor that "The reason for such action is. .
> . ."  It is simply not a part of human nature
> to explain in advance of unlawful action the
> *reasons* for such action.  We are therefore
> left to examine the circumstances surrounding
> the unlawful action and make rational
> inferences therefrom. Fortunately, <u>Smith v.
> Riceland Foods, Inc.</u>, allows us to do just
> that.

[Doc. #55 at 7 (emphasis in original)].  This is the only argument offered in opposition to summary judgment on plaintiff's equal protection claims.

granted on the equal protection claim.

III. Claims against the Town of East Haven

    Plaintiff has alleged that the Town of East Haven has
municipal liability for injuries arising from the individual
defendants' actions.

    Under Monell v. New York City Dep't of Soc. Serv., 436 U.S.
658 (1978), a municipality "may not be held liable under §1983
simply for the isolated unconstitutional acts of its employees.
In order to impose §1983 liability upon a municipality, a
plaintiff must demonstrate that any constitutional harm suffered
was the result of a municipal policy or custom." Sorlucco v. New
York City Police Dep't, 971 F.2d 864, 870 (2d Cir. 1992)
(internal citations omitted).

    To prevail on a Section 1983 claim against a municipality, a
plaintiff must plead and prove the following: "(1) an official
policy or custom that (2) causes the plaintiff to be subjected to
(3) a denial of a constitutional right." Batista v. Rodriquez,
702 F.2d 393, 397 (2d Cir. 1983) (citing Monell). Absent a
showing of a chain of causation between an official policy or
custom and the plaintiff's injury, Monell prohibits a finding of
liability against a municipality. See id.

    Defendant Town of East Haven moved for summary judgment on
the ground that plaintiff failed to produce evidence supportive
of a Monell claim against the municipality.  Plaintiff's
opposition to summary judgment fails to direct the Court to any

23

evidence to support this claim and fails to address defendant's argument in favor of summary judgment. The Court agrees that plaintiff's failure to provide argument on a claim at issue constitutes abandonment of the claim. Douglas v. Victor Capital Group, 21 F. Supp. 2d 379, 393 (S.D.N.Y. 1998) (deeming claims abandoned and recommending dismissal where plaintiff failed to provide oppositional argument); Minney v. Kradas, 3:01CV1543(EBB), 2004 WL 725330, *3 (D. Conn. Mar. 31, 2004); Taylor v. City of New York, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way."); Bronx Chrysler Plymouth, Inc. v. Chrysler Corp., 212 F. Supp. 2d 233, 249 (S.D.N.Y. 2002) (Where plaintiff's summary judgment opposition papers "made no argument in support of [one] claim at all" the court dismissed the claim as "abandoned."); National Commc'n. Ass'n, Inc. v. American Tel. & Tel. Co., No. 92CIV1735(LAP), 1998 WL 118174, *28 (S.D.N.Y. Mar. 16, 1998) (where plaintiff did not address claim in response to defendants' summary judgment motion, claim was deemed abandoned and summary judgment was granted). Accordingly, summary judgment is granted on plaintiff's Monell claim against the Town of East Haven.


CONCLUSION

Accordingly, defendant's Motion for Summary Judgment **[Doc. #43]** is **GRANTED** on all the claims.

24

Any objections to this recommended ruling must be filed with the Clerk of the Court within ten (10) days of the receipt of this order. Failure to object within ten (10) days may preclude appellate review. See 28 U.S.C. § 636(b)(1); Rules 72, 6(a) and 6(e) of the Federal Rules of Civil Procedure; Rule 2 of the Local Rules for United States Magistrates; Small v. Secretary of H.H.S., 892 F.2d 15 (2d Cir. 1989)(per curiam); F.D.I.C. v. Hillcrest Assoc., 66 F.3d 566, 569 (2d Cir. 1995).

Dated at Bridgeport, this day 6th day of January 2006.

```
_____/s/_____
HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE
```